**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**GARTNER, INC.,**

                  **Plaintiff,**

      **- against -**

**HCC SPECIALTY UNDERWRITERS, INC., ET AL.,**

                  **Defendants.**

**20-cv-4885 (JGK)**

**MEMORANDUM**
**OPINION & ORDER**

---

**JOHN G. KOELTL, District Judge:**

Gartner, Inc. ("Gartner") brought this action for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, unfair trade practices, unfair claims settlement practices, and equitable estoppel arising from the defendants' alleged breaches of "event cancellation" insurance policies that were negotiated and underwritten by defendant HCC Specialty Underwriters, Inc. ("Specialty Underwriters") as agent for its affiliate insurer, defendant U.S. Specialty Insurance Company ("USSIC"). The defendants now move to dismiss all of Gartner's claims except those for breach of contract. For the following reasons, the defendants' motion is **granted in part and denied in part.**

**I.**

**A.**

For purposes of this motion, the Court accepts as true the following allegations from the Second Amended Complaint ("Compl."), ECF No. 88.

Gartner, a Delaware corporation headquartered in Stamford, Connecticut, stages annual events and conferences – which it calls "shows" - throughout the world for Information Technology ("IT") and other professionals. Compl. ¶¶ 2, 7. Gartner hosts two types of shows. The first are large, multi-day conferences called "Destination Shows." Id. ¶ 14. For many years, Gartner has hosted upwards of 60-70 Destination Shows per year. Id. Around 2017, Gartner also acquired the smaller "Evanta" line of shows. Id. ¶ 15.

Because its shows are profitable, Gartner buys insurance to protect it from losses caused by event cancellations. Id. Since 2007, Gartner's New York-based broker, Aon/Albert G. Rubin Insurance Services ("Aon"), has procured these insurance policies through Specialty Underwriters, a Massachusetts underwriter based in Wakefield, Massachusetts, as agent for USSIC, a Texas insurance company based in Houston, Texas. Id. ¶¶ 8-10, 18, 83. Gartner alleges that neither it nor Aon ever negotiated directly with USSIC regarding its event cancellation policies. Id. ¶ 18. Instead, the policies were negotiated "with Specialty Underwriters in Massachusetts." Id.

Other than the Evanta Policy described below, Gartner's policies are typically effective for two years. Id. ¶ 5. Based on the parties' course of conduct, the defendants issue the policies with an initial schedule of events, listing the events

2

insured under the prior policy. Id. Gartner then submits an
updated schedule of events in the first quarter of each policy
year, reflecting events that Gartner had not hosted in the past
but planned to host during the new policy period, increased
gross revenue estimates for its recurring annual events, and
other adjustments Gartner made to its schedule. Id. Gartner
alleges that the defendants routinely accepted these changes and
that, before 2020, the defendants had never rejected coverage of
a show identified in Gartner's schedule or told Gartner that
they believed they could reject coverage for shows on Gartner's
schedule. Id.

    In 2019, Aon procured for Gartner the two insurance
policies at issue in this case. Id. ¶¶ 15-16. The "Destination
Policy," which insured Gartner's intended 2020 and 2021
Destination Shows, was in effect from December 30, 2019 through
December 31, 2021 and had an initial annual aggregate limit of
$150 million. Id. ¶¶ 29, 32. The "Evanta Policy," which insured
Gartner's Evanta Shows and was modeled after the Destination
Policy, was in effect from June 15, 2019 through December 31,
2020 and had an aggregate limit of $20 million. Id. ¶¶ 55-56.
Both Policies covered losses "directly or indirectly caused by,
resulting from or in connection with the outbreak of
communicable disease (whether actual or perceived")." Id. ¶¶ 17,
58. Both Policies also allowed Gartner to "reinstate" up to the

total annual limit of liability by paying a pre-determined
additional premium, thus potentially doubling the initial limits
to cover Gartner's losses. Id. ¶¶ 4, 23-25, 55, 58. Gartner
alleges that the limits of the Destination Policy that could be
reinstated at Gartner's "sole option" for 2020 and 2021 were
$150 million for each year of the two-year policy, while the
limit of the Evanta Policy that could be reinstated was $20
million. Id. ¶ 29. The Policies identified Gartner's address as
"291 Broadway, Suite 901, New York, New York," and each
contained a notice that the policy forms and rates "must meet
the minimum standards of the New York Insurance law and
Regulations." Id. ¶ 57. Specialty Underwriters and USSIC are
both authorized to issue insurance in New York as foreign
corporations. Id. ¶¶ 8, 10.

In February 2020, the Covid-19 pandemic forced Gartner to
begin cancelling shows. Id. ¶ 62. Through Aon, Gartner notified
Specialty Underwriters, the Massachusetts-based underwriter,
that it likely would cancel Destination Shows in Tokyo and Dubai
because of governmental travel advisories. Id. ¶¶ 63, 65. Lorna
Gillespie, a Special Underwriters' Director, assigned Hyperion
Adjusters ("Hyperion") to handle the matter. Id. ¶ 66. On
February 25, 2020, Gillespie informed Aon by email that "[t]he
policy would not respond to any cancellations/refunds arising
out of fear of traveling, alone." Id. Gartner soon cancelled the

Tokyo and Dubai shows, and Hyperion requested what Gartner characterizes as "voluminous and irrelevant documentation on the cancelled events, including lists of staff, exhibitors, contractors, and attendees, and detailed event budgets." Id. ¶¶ 68-70. Among other things, Hyperion asked Gartner to "identify and provide written confirmation from the lists of delegates and exhibitors who had declined to attend either Event and the reason stated for their withdrawal." Id. On March 11, 2020, George Walden, one of Gartner's brokers at Aon, responded that the requested information was unreasonably burdensome and irrelevant because Covid-19 was the obvious reason for the cancellations. Id. ¶ 71. Michael Thompson of Specialty Underwriters wrote back the same day, telling Aon that Hyperion was "just trying to get details to support the claim and provide a detailed report to insurers" and advising Aon that "[t]he insured will need to provide the reasons/details [why] they were unable to open the show." Id. ¶ 72.

As Covid-19 continued to spread during March 2020, Gartner cancelled two more shows in London, two in the United States, and three in Sweden. Id. ¶ 73. Each time, Aon asked Specialty Underwriters to confirm that the cancellations would be covered by the Destination Policy's "Communicable Disease" coverage extension. Id. On March 26, 2020, Specialty Underwriters confirmed coverage for the Tokyo and Dubai cancellations,

subject to adjustment of the amounts owed. Id. ¶ 74. Specialty Underwriters later confirmed that it would cover all of Gartner's events cancelled due to Covid-19 through the end of May 2020. Id. ¶ 76.

On April 14, 2020, Gartner provided detailed spreadsheets identifying the city and specific location of events it had cancelled through August for the Destination Policy and through June for the Evanta Policy, and the expected revenue associated with those events. Id. ¶ 77. The next day, Aon asked Specialty Underwriters to "advise next steps for a full re-instatement of limits" under both Policies. Id. ¶ 79. On May 11, 2020, having received no response, Aon's Walden again asked Specialty Underwriters for written confirmation that the limits would be fully reinstated, calling the delay "frustrating and unreasonable" and imploring Specialty Underwriters to "accept the obvious in light of present world events." Id. ¶ 80. Two days later, on May 13, 2020, Specialty Underwriters' Gillespie responded by letter that because "complex coverage questions" were implicated by Aon's request for a full reinstatement of limits, "it is premature at this point to address the question, but USSIC will provide its position on the issue within" two weeks. Id. ¶¶ 83-84.

Gillespie provided USSIC's promised position on May 27, 2020:

6

> USSIC will agree to reinstate the original limit of
> liability for the cancelled Shows, however . . . the
> reinstated liability limits for a particular Show will
> respond solely to costs incurred with respect to the
> Show or Shows for which reinstatement is requested. In
> no event can such reinstatement of limits be used for
> purposes of paying claims relating to a separate and
> unrelated Show, nor will reinstatement of limits result
> in an increase in the Aggregate Limit of Indemnity.

Id. ¶ 85.

The same day, and with no prior notice to Gartner, USSIC sued Gartner in two actions in the Southern District of Texas (the "Texas Lawsuits"). Id. ¶ 86. The Texas Lawsuits sought declaratory judgments that Gartner was not entitled to have the Policies' limits fully reinstated, add "new" events, or claim increased projected revenues beyond what Gartner expected from the 2019 iteration of its shows. Id. The Texas Lawsuits were later dismissed, at what Gartner characterizes as "great expense to" it, for lack of personal jurisdiction. Id.

Throughout 2020 and continuing into 2021, Gartner continued to provide Hyperion with "volumes of information on its profit margins, commissions and other costs relating to the events cancelled in 2020 as a result of the pandemic." Id. ¶ 88. By February 1, 2021, Gartner timely provided its intended schedule of Destination Shows for 2021 and paid the Destination Policy premium. Id. ¶¶ 93, 124. In March 2021, Specialty Underwriters informed Gartner by e-mail that USSIC would only insure the fifteen events scheduled in 2021 that Gartner had not already

cancelled by February 2021. Id. ¶ 96. Specialty Underwriters then asserted that because "Covid-19 was a known loss on the Effective Date of coverage for the 2021 shows (on January 1, 2021)," a mid-policy "Covid exclusion" would apply to those fifteen shows. Id. Gartner alleges that "[b]y asserting that USSIC could refuse to cover Gartner's recurring shows that had been planned for 2021 as of the policy's inception," the defendants "eviscerated coverage for the second year of the two-year policy that Gartner purchased." Id. ¶ 98.

On April 13, 2021, Hyperion finished adjusting Gartner's claims for its cancelled 2020 Destination Shows and calculated Gartner's losses for these shows at $281,919,708. Id. ¶ 90. On May 27, 2021, after "communicat[ing] with USSIC's reinsurers," the defendants wired $150 million to Gartner. Id. ¶¶ 91-92. The $150 million did not include any interest on money that Gartner alleges should have been paid before May 27, 2021. Id. ¶ 92.

Although Gartner alleges that it has "document[ed] over $50,000,000 in loss due to the cancellation of Evanta Shows," Gartner has not been compensated for any losses under the Evanta Policy. Id.

**B.**

On June 25, 2020, about a month after USSIC filed the Texas Lawsuits, Gartner filed the original complaint in this action.

ECF No. 1. The defendants moved to stay this action or transfer it to the Southern District of Texas. ECF Nos. 15, 32. Opposing the defendants' motion, Gartner argued that "this dispute involves the interpretation of insurance policies that were negotiated, purchased and delivered in New York" and that "expressly invoke New York law." ECF No. 35 at 9, 19. This Court denied the motion to stay or transfer. ECF No. 52.

Gartner filed the operative second amended complaint on February 24, 2022. ECF No. 88. The Complaint alleges the following:

- **Counts I-III -** Gartner is entitled to three declaratory judgments against USSIC, namely, that Gartner is entitled to reinstate the initial aggregate limits of the Destination Policy for 2020 and 2021 and the aggregate limits of the Evanta Policy, that USSIC is obligated to provide coverage for the 2020 Evanta Shows, and that USSIC is obligated to provide coverage for the 2021 Destination Shows, id. ¶¶ 99-117;

- **Count IV** - USSIC breached the Destination Policy by refusing to reinstate the aggregate annual limits of liability in 2020, by imposing the Covid exclusion for two of Gartner's 2020 Destination Shows, by refusing to cover the events that Gartner intended to hold in 2021 but was forced to cancel, by imposing the Covid exclusion for shows

that Gartner intended to hold in 2021, and by depriving
Gartner of the reinstatement coverage for 2021, <u>id</u>. ¶¶ 118-
126;

- **Count V** - USSIC breached the Evanta Policy by refusing to
  reinstate the Policy's aggregate limits and by failing to
  pay for any of Gartner's losses for cancellations of the
  Evanta Shows, <u>id.</u> ¶¶ 127-134;

- **Count VI** - USSIC breached the implied covenant of good
  faith and fair dealing under the Policies, directly and
  through Specialty Underwriters, principally by refusing to
  reinstate the Policies' limits and altering Gartner's
  schedules of events, delaying USSIC's responses to
  Gartner's requests for reinstatement, directing Hyperion to
  demand burdensome and unnecessary information, delaying
  payment of losses, and filing the Texas Lawsuits,
  <u>id.</u> ¶¶ 135-141;

- **Count VII** - USSIC and Specialty Underwriters violated
  Massachusetts's Unfair Trade Practices Act through USSIC's
  conduct in handling Gartner's requests for coverage under
  the Policies, <u>id.</u> ¶¶ 142-146;

- **Count VIII** - USSIC and Specialty Underwriters violated the
  Connecticut Unfair Trade Practices Act and the Connecticut
  Unfair Insurance Practices Act through USSIC's conduct in

10

handling Gartner's requests for coverage under the
Policies, id. ¶¶ 147-158; and

- **Count IX** - Gartner is entitled to a declaration that both
  defendants are "equitably estopped" from: denying coverage
  for Gartner's 2021 losses; imposing the Covid exclusion to
  the Destination Policy; refusing to allow Gartner to
  reinstate the $150 million annual aggregate limit of the
  Destination Policy for 2020, the $150 million annual
  aggregate limit of the Destination Policy for 2021, and the
  $20 million aggregate limit of the Evanta Policy; refusing
  to apply the reinstated limits to cover Gartner's loss due
  to the cancellation of any scheduled shows; and denying
  coverage for 2021 losses on the basis that Covid-19 was a
  known loss, id. ¶¶ 159-171.

The defendants now move to dismiss all of Gartner's claims
except Counts IV and V for breach of contract.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007). The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at trial but merely
to determine whether the complaint itself is legally

11

sufficient." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss a claim if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, it need not accept as true legal conclusions contained in the complaint. <u>Id.</u>[1]

### III.

The defendants move to dismiss Counts I, II, and III, which seek declaratory judgments against USSIC, as duplicative of Counts IV and V, the claims for breach of contract against USSIC. "Where a claim for declaratory judgment seeks a declaration of the same rights as will be determined under a claimant's action for breach of contract, it is duplicative and must be dismissed." <u>ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.</u>, No. 19-cv-7800, 2021 WL 1177532, at *25 (S.D.N.Y. Mar. 29, 2021). Gartner does not contest that the

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

declaratory judgment claims are duplicative of the breach of contract claims. Counts I, II, and III are therefore **dismissed with prejudice**.

**IV.**

The defendants also move to dismiss Count VI, Gartner's claim against USSIC for breach of the implied covenant of good faith and fair dealing, as duplicative of the breach of contract claims. The parties' briefs rely on New York law. See Def.'s Mot. to Dismiss, ECF No. 93, at 17-19; Pl.'s Opp., ECF No. 96, at 20-21. Such implied consent is sufficient to establish choice of law. Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000).

New York law implies in every contract a covenant of good faith and fair dealing. Jaffe v. Paramount Commc'ns Inc., 644 N.Y.S.2d 43, 47 (App. Div. 1996). The covenant prevents a party to a contract from "destroying or injuring the right of the other party to receive the fruits of the contract," JN Contemp. Art LLC v. Phillips Auctioneers LLC, 29 F.4th 118, 128 (2d Cir. 2022), and incorporates "any promises which a reasonable person in the position of the promisee would be justified in understanding were included" in the contract," Rowe v. Great Atl. & Pac. Tea Co., 385 N.E.2d 566, 569 (N.Y. 1978). However, New York law "does not recognize a separate cause of action for breach of the implied covenant" when "a breach of contract

claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). Accordingly, "[w]here a good faith claim arises from the same facts and seeks the same damages as a breach of contract claim, it should be dismissed." Mill Fin., LLC v. Gillett, 992 N.Y.S.2d 20, 25 (App. Div. 2014).

The factual bases for the claimed breach of the covenant of good faith and fair dealing largely duplicate those for breach of contract. The allegation that USSIC breached the implied covenant "by refus[ing] to permit Gartner to reinstate" the Policies' aggregate limits, for example, is based on the same facts as the breach of contract claims. Compare Compl. ¶¶ 120, 131, with id. ¶ 139. So too are the allegations that USSIC breached the implied covenant by "add[ing] new exclusions," compare id. ¶ 122, with id. ¶ 139, and by altering or refusing Gartner's schedules of events, compare id. ¶¶ 124, 132, with id. ¶ 139. These allegations cannot support Gartner's claim for an independent breach of the implied covenant.

Gartner instead points to four allegedly independent allegations: Specialty Underwriters' representation that reinstatement was premature even though USSIC intended to sue Gartner in Texas, id. ¶¶ 137-138; Specialty Underwriters' demands for "ridiculous amounts of irrelevant information from Gartner to substantiate its claims," Pl.'s Opp. at 20; USSIC's

14

decision to "unreasonably delay[] payment where the coverage obligation was clear," id. at 20-21; and USSIC's filing of the "meritless lawsuit[s]" in Texas, id. at 21.

It is true that Gartner only pleaded these factual allegations in connection with its implied covenant claim, and not its breach of contract claims. But under New York law, an implied covenant claim can duplicate a breach of contract claim even if "[t]he conduct alleged in the two causes of action [is not] identical in every respect." Gillett, 992 N.Y.S.2d at 25. "It is enough that they arise from the same operative facts." Id.; see also, e.g., ARI & Co., Inc. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003) ("That ARI chose not to include the allegations that comprised its [implied covenant] claim within the contents of its two breach of contract claims does not mean that those acts support a separate claim for breach of an implied covenant of good faith.").

In this case, Gartner's additional allegations arise from the same operative facts as Gartner's claims for breach of contract. The allegations that USSIC delayed conveying its coverage position, directed Hyperion to request irrelevant information, and unreasonably delayed payments address the "same ultimate grievance" as the breach of contract claims, namely, USSIC's "failure to comply with the agreement[s]." County of Orange v. Travelers Indem. Co., No. 13-cv-6790, 2014 WL 1998240,

15

at *3 (S.D.N.Y. May 14, 2014); see also, e.g., Sikarevich Family

L.P. v. Nationwide Mut. Ins. Co., 30 F. Supp. 3d 166, 171

(E.D.N.Y. 2014) (dismissing implied covenant claim based on

allegations regarding insurer's claim investigation as

duplicative of breach of contract claim). The damages Gartner

seeks to recover through these allegations also "are

intrinsically tied to the damages allegedly resulting from"

USSIC's breach of the Policies. ARI, 273 F. Supp. 2d at 523. The

Complaint identifies no damages stemming from USSIC's delays or

Hyperion's requests for information that are not derived from or

associated with the loss of proceeds under the Policies, which

also form the basis of the breach of contract claims. Cf. H&H

Env't Sys., Inc. v. Evanston Ins. Co., No. 18-cv-6315, 2019 WL

1129434, at *7 (W.D.N.Y. Mar. 12, 2019) (implied covenant claim

concerning delayed payment of insurance proceeds did not

duplicate breach of contract where plaintiff alleged "additional

losses which would not otherwise be remedied by a full payment

of Plaintiff's breach of contract claim"). In the absence of

damages from Gartner's allegations of delay and obfuscation

distinct from the damages associated with Gartner's claims for

breach of contract, these allegations cannot sustain an

independent implied covenant claim.

Gartner's remaining allegation that USSIC breached the

implied covenant by filing the Texas Lawsuits also cannot

16

sustain its breach of the implied covenant claim, because a party's filing of a lawsuit "to enforce [its] contractual and common law rights . . . cannot constitute such a breach." Carbonyx Lic. & Lease LLC v. Carbonyx Inc., No. 19-cv-1540, 2019 WL 2867022, at *5 (S.D.N.Y. July 1, 2019); see also, e.g., Ray Legal Consulting Grp. v. DiJoseph, 37 F. Supp. 3d 704, 724-25 (S.D.N.Y. 2014) (dismissing implied covenant claim where plaintiff alleged defendants' conduct in commencing separate lawsuit that was ultimately dismissed constituted bad faith).[2]

Because the Complaint does not state an independent claim against USSIC for breach of the implied covenant of good faith and fair dealing, Count VI is **dismissed without prejudice.**

---

[2] Gartner cites Riveredge Assocs. v. Metro. Life Ins. Co., 774 F. Supp. 897, 901 (D.N.J. 1991), for the proposition that filing a meritless lawsuit may breach the implied covenant. But Riveredge held only that an implied covenant claim "can be maintained under New Jersey law based on allegations that a party has asserted an interpretation of the contract contrary to its own understanding of the express terms of that contract." Id. at 900. Gartner cites no case applying New York law to the same effect. See Sauer v. Xerox, 95 F. Supp. 2d 125, 130 n.1 (W.D.N.Y. 2000) (distinguishing Riveredge on the ground that New York law has "no such rule"), aff'd, 5 F. App'x 52 (2d Cir. 2001). Nor has Gartner shown that USSIC asserted an interpretation of the Policies in the Texas Lawsuits contrary to its own understanding of the Policies. USSIC's position in those cases - that Gartner is not entitled to full reinstatement of the Policies' limits – appears consistent with the defendants' position now.

V.

The defendants also move to dismiss Count VII, which alleges that both defendants violated Massachusetts' unfair trade practices statute, known as "Chapter 93A." Mass. Gen. Laws c. 93A §§ 2, 11.

Chapter 93A "provides for a private right of action to those suffering monetary losses from unfair deceptive conduct in commercial dealings." OneBeacon Am. Ins. Co. v. Colgate-Palmolive Co., 995 N.Y.S.2d 35, 39 (App. Div. 2014). The alleged "unfair or deceptive act or practice" must have "occurred primarily and substantially within" Massachusetts. Mass. Gen. Laws c. 93A, § 11. Moreover, a "simple breach of contract does not violate Chapter 93A." Northeast Data Sys., Inc. v. McDonnell Douglas Comput. Sys. Co., 986 F.2d 607, 610 (1st Cir. 1993). Rather, "[t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Levings v. Forbes & Wallace, Inc., 396 N.E.2d 149, 153 (Mass. App. Ct. 1979). Chapter 93A "authorizes the award of attorneys' fees as well as actual damages," plus double or treble damages for "knowing and willful violation[s]." Canal Elec. Co. v. Westinghouse Elec. Corp., 548 N.E.2d 182, 188 n.10 (Mass. 1990).

Gartner's Chapter 93A claims against USSIC and Specialty Underwriters are considered in turn.

**A.**

The Chapter 93A claim against USSIC must be dismissed because it essentially duplicates Gartner's claims for breach of contract. Chapter 93A "is not subject to the traditional limitations of preexisting causes of action," and a Chapter 93A claim "may be merely duplicative of a traditional contract claim." Id. at 188. But in those cases, Chapter 93A "does not apply when another jurisdiction's laws govern the underlying breach of contract claims." OneBeacon, 995 N.Y.S.2d at 39; see also, e.g., Northeast Data, 986 F.2d at 609-10 (California choice-of-law provision in contract barred Chapter 93A claim that "essentially reduce[d] to a contract claim"); Canal Elec. Co., 548 N.E.2d at 188 (warranty's liability provision barred Chapter 93A claim that was merely "an alternate theory of recovery under the contract").

Gartner alleges that the defendants violated Chapter 93A by mispresenting the coverage available under the Policies, refusing to reinstate the Policies' limits, delaying the payment of acknowledged covered losses, and denying coverage for other losses. Compl. ¶ 144. These same allegations form the breach of contract claims against USSIC. The contract violations therefore are "essential elements of the 93A claims" against USSIC, and the Chapter 93A claim "essentially reduce[s] to a contract claim." Northeast Data, 986 F.2d at 609 (characterizing Chapter

19

93A claims as "embroidered 'breach of contract' claims" where complaint alleged that defendant "'knowingly' or 'willfully' broke the contract" and "threatened to take actions that the contract forbids, with a bad motive"); see also OneBeacon, 995 N.Y.S.2d at 39 (similar, where plaintiff "base[d] its claim on [counterclaim-defendant's] alleged duties 'under the [Policies]'").[3]

The question, then, is whether "another jurisdiction's laws" – as opposed to Massachusetts' – "govern the underlying breach of contract claims" arising from the Policies. OneBeacon, 995 N.Y.S.2d at 39. The Policies do not contain choice-of-law provisions, and the parties spend large parts of their briefs answering the question of which state's law would apply to the breach-of-contract claims. At this juncture, the question need not be resolved definitively because USSIC has not moved to dismiss the contract claims. For Chapter 93A purposes, it suffices to note that Massachusetts law will not govern the contract claims.

Federal courts sitting in diversity apply the choice-of-law rules of the forum state, in this case New York. Klaxon v.

---

[3] This is not a case in which the Chapter 93A claim may survive alongside a breach of contract claim because it challenges the "circumstances underlying the formation of the contract." NPS, LLC v. Ambac Assur. Corp., 706 F. Supp. 2d 162, 169 (D. Mass. 2010).

Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). New York
courts apply a "center of gravity" approach in choosing which
state's law to apply when adjudicating a contract claim. Lazard
Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539
(2d Cir. 1997). "Under this approach, specifically in matters of
insurance coverage, New York courts have looked principally to
the following factors: the location of the insured risk; the
insured's principal place of business; where the policy was
issued and delivered; the location of the broker or agent
placing the policy; where the premiums were paid; and the
insurer's place of business." SS&C Tech. Holdings, Inc. v. AIG
Specialty Ins. Co., No. 19-cv-7859, 2019 WL 7816253, at *2 n.3
(S.D.N.Y. Nov. 6, 2019).

These factors overwhelmingly favor applying New York or
possibly Connecticut law, but plainly not Massachusetts law, to
Gartner's contract claims. The insured risk is in New York,
Compl. ¶¶ 33, 57 (identifying Gartner's New York address); the
insured's principal place of business is in Connecticut,
id. ¶ 7; the Policies were issued and delivered in New York,
which Gartner concedes, see ECF No. 35, at 5, 9, 19; Gartner's
broker, Aon, is located in New York, see Compl. ¶ 83; the
premiums were paid from New York, id. ¶ 18; and the place of
business of the insurer, USSIC, is Texas, id. ¶ 10. The only
connection to Massachusetts is that Specialty Underwriters,

21

USSIC's underwriting affiliate, is based there. As Gartner
earlier argued to the Court, "this dispute involves the
interpretation of insurance policies that were negotiated,
purchased and delivered in New York" and "expressly invoke New
York law." ECF No. 35, at 9, 19.

Because Gartner's Chapter 93A claim against USSIC
"essentially reduce[s] to a contract claim" governed by the laws
of a state other than Massachusetts, Northeast Data, 986 F.2d at
610, Count VII is **dismissed with prejudice against USSIC**.[4]

---

[4] Gartner argues that Chapter 93A applies even if
interpretation of the policies is governed by New York law.
Pl.'s Opp. at 13. To support this proposition, Gartner cites
Olin Corp. v. Ins. Co. of N.A., No. 84-cv-1968, 2010 WL 5158121
(S.D.N.Y. Dec. 17, 2010). The court there declined to dismiss a
Chapter 93A claim after deciding to apply New York law to
interpret the insurance contracts at issue, on the ground that
"there is no inconsistency between applying the law of New
York . . . on questions of insurance coverage" and "entertaining
a tort claim under Massachusetts law." Id. at *1. Olin neither
cites any authority nor has been cited by any court. It is also
inapposite. The Olin court characterized the Chapter 93A claim
there as "a tort claim," whereas Gartner's Chapter 93A claim is
contract-based.

Gartner also cites Finance One Public Co. Ltd. v. Lehman
Bros. Special Financing, Inc. for the "reluctance on the part of
New York courts to construe contractual choice-of-law clauses
broadly to encompass extra-contractual causes of action." 414
F.3d 325, 334 (2d Cir. 2005); see Pl.'s Opp. at 9-10. But that
language addressed the application of "tort claims [that] are
outside the scope of contractual choice-of-law provisions." Id.
at 335. The case had nothing to do with Chapter 93A. And there
is no inconsistency with the well-established rule, recognized
including by New York courts, that contract-based Chapter 93A
claims should be dismissed if the underlying contract is not
governed by Massachusetts law. See, e.g., OneBeacon, 995
N.Y.S.2d at 39. Moreover, as discussed above, it is plain that,

**B.**

Gartner's Chapter 93A claim against Specialty Underwriters is another matter. Specialty Underwriters was not a party to the Policies, and Gartner has not sued Specialty Underwriters for breach of contract. The defendants have not argued that the Chapter 93A claim against Specialty Underwriters should be dismissed as duplicative of any breach of contract claim. Rather, the defendants argue that the Chapter 93A claim should be dismissed against Specialty Underwriters because any alleged "unfair or deceptive act or practice" did not "occur[] primarily and substantially within" Massachusetts. Mass. Gen. Laws c. 93A, § 11. A defendant bears the burden of proving that any wrongful acts under Chapter 93A did not occur primarily and substantially within Massachusetts. Id. At this early stage of the dispute, Specialty Underwriters has not met this burden.

Determining whether a claim's center of gravity is primarily and substantially within Massachusetts is "fact intensive" and cannot "be reduced to any precise formula." Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp., 781 N.E.2d 787, 798 (Mass. 2003). "Significant factors that can be identified for one case may be nonexistent in another." Id. Courts have considered where the defendant committed the alleged

_____

applying New York choice of law principles, the insurance contracts are not governed by Massachusetts law.

deception, where the plaintiff was deceived and acted upon the deception, and where the plaintiff suffered losses. Roche v. Royal Bank of Can., 109 F.3d 820, 829 (1st Cir. 1997); see also Arabian Support & Servs. Co., Ltd. v. Textron Sys. Corp., 943 F.3d 42, 47 (1st Cir. 2019).[5] Because the Massachusetts Supreme Judicial Court has instructed courts to make findings of fact and consider "those findings in the context of the entire" claim when determining a dispute's center of gravity under Chapter 93A, Kuwaiti, 781 N.E.2d at 799, a motion to dismiss "is generally not an appropriate vehicle for raising the issue," Controlled Kinematics, 2017 WL 5892200, at *4; see also Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd., No. 14-cv-12047, 2015 WL 4467064, at *11 (D. Mass. July 20, 2015) (same).[6]

---

[5] Gartner notes that Roche was decided six years before the Massachusetts Supreme Judicial Court's ruling in Kuwaiti. But courts regularly apply the factors identified in Roche even after Kuwaiti, although "courts have differed as to which factor should carry the most weight in the analysis." Controlled Kinematics, Inc. v. Novanta Corp., No. 17-cv-11029, 2017 WL 5892200, at *4 (D. Mass. Nov. 29, 2017) (collecting cases); see also Arabian Support, 943 F.3d at 47 (explaining that the district court "did not apply Roche in a manner inconsistent with Kuwaiti" where the district court "carefully considered the nature of each alleged instance of misconduct, as well as the number of alleged instances, in the context of the entire claim and in doing so, performed the 'fact intensive' analysis required by" Kuwaiti).

[6] It is true that "courts have not hesitated to dismiss Chapter 93A claims at the 12(b)(6) stage where a plaintiff fails to allege that it suffered sufficient injuries within Massachusetts." Oliver Wyman, Inc. v. Eielson, No. 15-cv-5305, 2016 WL 5339549, at *13 (S.D.N.Y. Sept. 22, 2016) (collecting cases). This is because it is "a question of law" whether the

Gartner's Chapter 93A claim against Specialty Underwriters centers on the obstruction of Gartner's efforts to recover under its insurance policies. Gartner alleges that Specialty Underwriters orchestrated these efforts from its headquarters in Massachusetts, including through letters and emails sent from Massachusetts. See, e.g., Compl. ¶¶ 66, 83-85, 96. These allegations are sufficient to indicate that Specialty Underwriters committed the alleged misconduct in Massachusetts and that the Chapter 93A claim against Specialty Underwriters is centered "primarily and substantially" in Massachusetts. Through the course of discovery, it may turn out that the center of gravity in this case is not Massachusetts, especially given Gartner's allegations that it received and acted on Specialty Underwriters' communications in New York and Connecticut and defended against the Texas Lawsuits in Texas. See, e.g., Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 672 (Mass. 1985) (finding, on motion for summary judgment, "no primary

---

conduct at issue occurred primarily and substantially within Massachusetts. Blue Cross Blue Shield of Mass. v. AstraZeneca Pharms. LP, 582 F.3d 156, 194 (1st Cir. 2019). But see Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc., 733 F. Supp. 2d 204, 213 (D. Mass. 2010) ("Due to the fact-finding process necessarily involved in evaluating the [primarily-and-substantially] issue, this particular ground for challenging a [Chapter] 93A claim . . . cannot be resolved on Rule 12 motions."). In this case, dismissal is not appropriate because the center of gravity of the alleged violation does not point so clearly to Massachusetts that the Court could resolve the issue on a motion to dismiss.

involvement with Massachusetts" where Massachusetts defendant's allegedly wrongful communications were made in Massachusetts, because the communications were "received and acted on in New York and any loss was incurred in New York"). It also may be that the "significant contacts of the competing jurisdictions are approximately in the balance," in which case "the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts." Fishman Transducers, Inc. v. Paul, 684 F.3d 187, 197 (1st Cir. 2012).

But because the Complaint "directly references actions that occurred in Massachusetts and communications sent from Massachusetts," Gartner "has provided enough factual detail to survive a motion to dismiss." Controlled Kinematics, 2017 WL 5892200, at *5 (denying motion to dismiss Chapter 93A claims brought by California-based plaintiff, where complaint alleged that Massachusetts-based defendant's wrongful practice "was developed by senior company officials based in Massachusetts and implemented through letters and emails sent from Massachusetts by these individuals"); see also Fishman v. John Hancock Life Ins. Co. (U.S.A.), No. 13-cv-12166, 2014 WL 1326989, at *3 (D. Mass. Mar. 27, 2014) (declining to dismiss Chapter 93A claims where defendant made allegedly wrongful decisions concerning insurance policies from Massachusetts, even though the

plaintiffs were New York-based and received the policies in New York).

Accordingly, the motion to dismiss Gartner's Chapter 93A claim against Specialty Underwriters is **denied.**

## VI.

The defendants move to dismiss Gartner's claim that the defendants violated the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815, and the Connecticut Unfair Trade Practices Act ("CUTPA"), id. § 42-110b. Gartner alleges that the defendants violated these statutes by misrepresenting the coverage available under the Policies, by filing the Texas Lawsuits, and in handling Gartner's Covid-19 cancellation claims. Compl. ¶ 151. Gartner also alleges that "[u]pon information and belief, Specialty Underwriters on behalf of itself and USSIC engaged in the aforementioned acts and practices as part of its general business practice." Id. ¶ 153.

CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in trade or commerce. Conn. Gen. Stat. § 42-110b(a). The statute provides a right of action for anyone harmed by an unfair or deceptive act. Id. § 42-110g(a). "CUIPA in turn defines unfair or deceptive acts or practices in the insurance business, and prohibits any person from engaging in such practices in Connecticut." Hartford Roman Cath. Diocesan Corp. v. Interstate Fire & Cas. Co., 905 F.3d 84, 95 (2d Cir.

27

2018). However, because CUIPA does not provide an independent cause of action, "Connecticut plaintiffs are allowed to use CUTPA as a vehicle to bring CUIPA claims." Id. at 94-95. To prove an unfair claim settlement practice under CUIPA, as Gartner alleges here, Compl. ¶ 1, "a plaintiff must demonstrate that the defendant has engaged in unfair or deceptive acts with such frequency as to indicate a general business practice," Hartford, 905 F.3d at 95. "General" means "prevalent, usual, or widespread," and "practice" means "performance or application habitually engaged in . . . or repeated or customary action." Id. at 96 (citing Lees v. Middlesex Ins., 643 A.2d 1282, 1286 (Conn. 1994)).

The Complaint fails to allege adequately a general business practice by the defendants. Gartner's allegations concern the defendants' handling of Gartner's claim under the Policies. But "alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a general business practice as required by § 38a-816(6)." Lees, 643 A.2d at 1286; see also Preferred Display, Inc. v. Great Am. Ins. Co. of N.Y., 288 F. Supp. 3d 515, 528 (D. Conn. 2018) ("[I]solated instances of unfair settlement practices are not sufficient to establish a claim.").

Gartner points to its additional allegation that "Specialty Underwriters on behalf of itself and USSIC engaged in the aforementioned acts and practices as part of its general business practice." Compl. ¶ 153. Without more, this allegation cannot state a general business practice in federal court. Some Connecticut state courts have allowed CUIPA claims to proceed on "a bare allegation that a complained-of practice constitutes [an insurer's] general business practice, without specific examples of other instances in which it has allegedly engaged in the same practice." Active Ventilation Prods., Inc. v. Prop. & Cas. Ins. Co. of Hartford, No. 09-cv-85023757, 2009 WL 2506360, at *3 (Conn. Super. Ct. July 15, 2009); see also, e.g., Afifi v. Standard Fire Ins. Co., No. 11-cv-6017083, 2011 WL 5307371, at *5 (Conn. Super. Ct. Oct. 21, 2011). But these cases applied Connecticut's liberal pleading standards, which require courts to construe the complaint "in the manner most favorable to sustaining its legal sufficiency." Active Ventilation, 2009 WL 2506360, at *4. In contrast, Gartner must satisfy the more rigorous federal pleading standards, and the Court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal, 556 U.S. at 663.[7]

---

[7] In any event, Active Ventilation and Afifi do not represent the dominant understanding, even among Connecticut

That is why federal district courts applying Connecticut law "have declined to follow state court decisions sustaining the legal sufficiency of CUTPA/CUIPA unfair claims settlement practice claims that rely on a conclusory allegation that the defendant has committed those acts as part of a general business practice." Prucker, 2019 WL 2880369, at *6 (collecting cases). Instead, federal courts have "sustained the legal sufficiency of CUTPA/CUIPA unfair claims settlement practice claims" principally where "there is some reference in the complaint to the denial of similar claims based on similar practices." Id.; see also, e.g., New England Sys., Inc. v. Citizens Ins. Co. of Am., No. 20-cv-1743, 2021 WL 1978691, at *4 (D. Conn. May 17, 2021); Belz v. Peerless Ins. Co., 46 F. Supp. 3d 157, 166 (D. Conn. 2014). The Complaint does not make such a showing.

---

state courts, of whether "an allegation of a general business practice, unsupported by specific instances of insurer misconduct," is sufficient. Active Ventilation, 2009 WL 2506360, at *4. Both courts acknowledged the "split among Superior Courts on" this "thorny" issue. Id. at *3; Afifi, 2011 WL 5307371, at *5. Other Connecticut courts have required that "the plaintiff plead specific facts to demonstrate acts of insurer misconduct that go beyond the plaintiff's immediate claim." Afifi, 2011 WL 5307371, at *5; see also, e.g., Prucker v. Am. Econ. Ins. Co., No. CV186013630S, 2019 WL 2880369, at *6 (Conn. Super. Ct. May 31, 2019) ("This court's view is that more than just a conclusory allegation of a general business practice is required to state a cause of action for unfair claims settlement practices in pursuit of a CUTPA/CUIPA claim."). Whatever the sufficiency of the allegation in the Complaint under Connecticut's pleading standards, it is plain that the Complaint has failed to allege a CUTPA/CUIPA violation under federal pleading standards.

Gartner also asserts that after filing the Complaint, it "learned of at least two other cases where Specialty and an affiliate were accused of nearly identical misconduct as alleged here — specifically the attempt to insert new coverage-limiting exclusions mid-policy period." Pl.'s Opp. at 19. It is unnecessary to address whether Gartner would have pleaded a cause of action under CUTPA and CUIPA had Gartner included these additional allegations in the Complaint, because a party "may not amend the Complaint through [its] brief." Li v. Napolitano, No. 08-cv-7353, 2009 WL 2358621, at *2 (S.D.N.Y. July 30, 2009). On a motion to dismiss, the Court looks only to the sufficiency of the allegations in the complaint, and the Complaint in this case alleges a business practice arising solely from the defendants' conduct in assessing Gartner's intertwined insurance claims. Because Gartner has failed to allege either other instances in which the defendants violated CUIPA or other claimants who suffered from similar unfair practices, Count VIII of the Complaint is **dismissed without prejudice**.[8]

---

[8] At argument on the current motion, the defendants urged the Court to dismiss Gartner's CUTPA/CUIPA claims with prejudice. But "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013). Accordingly, Count VIII is dismissed without prejudice.

## VII.

Finally, the defendants move to dismiss Count IX, which seeks a declaratory judgment sounding in equitable estoppel. Compl. ¶ 171 (seeking a "declaration that the Defendants are equitably estopped from" denying coverage with respect to cancelled 2021 shows, among other things); id. ¶ 169 ("Gartner . . . has been prejudiced and suffered a loss of money for which Defendants are liable[.]"). To the extent Count IX seeks a declaratory judgment, it is dismissed as duplicative of the breach of contract claims for the same reasons that Counts I-III are dismissed. To the extent Count IX seeks to recover damages under a distinct theory of equitable estoppel, see Pl.'s Opp. at 22 ("Count IX States a Claim for Equitable Estoppel"), the claim must be dismissed because there is no cause of action for equitable estoppel under New York law, Jain v. T&C Holding Inc., No. 10-cv-1006, 2011 WL 814659, at *7 (S.D.N.Y. Mar. 3, 2011); see also Maitland v. Lunn, No. 14-cv-5938, 2017 WL 1088122, at *9 (E.D.N.Y. Mar. 21, 2017) ("[E]quitable estoppel is an affirmative defense, not a cause of action.").

Accordingly, Count IX is **dismissed with prejudice.**

### CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, Counts

I-III of the Complaint are **dismissed with prejudice**; Count VI is **dismissed without prejudice**; Count VII is **dismissed with prejudice against USSIC**, but Specialty Underwriters' motion to dismiss Count VII is **denied**; Count VIII is **dismissed without prejudice**; and Count IX is **dismissed with prejudice**. The Clerk of Court is respectfully directed to close ECF No. 91.

**SO ORDERED.**

Dated:    **New York, New York**
          **January 31, 2023**

                                    _____
                                         **John G. Koeltl**
                              **United States District Judge**